Monica L. Hartsock SBN 270114
**LAW OFFICE OF MONICA HARTSOCK**
4562 Hastings Ct.
Chino, CA 91710
Ph: (909) 536-1773
Monica@Hartsocklawfirm.com

Attorneys for Plaintiff EJH GROUP, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EJH GROUP, INC., a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 8:18-cv-00009-JVS-DFMx<br><br>*Assigned for all purposes to the Hon. Judge James Selna*<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR A NEW TRIAL UNDER THE FEDERAL RULES OF CIVIL PROCEDURE RULE 59**<br><br>Hearing Date: August 26, 2019<br>Hearing Time: 1:30 pm<br>Hearing Dept.: Courtroom 10C<br><br>Complaint Filed in State Court: 12/1/2017<br>Case Removed to Federal Court: 01/4/2018<br>Trial Date: 06/11/2019 |

TO THE HONORABLE COURT, DEFENDANT BMW OF NORTH AMERICA, LLC AND ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 26, 2019 at 1:30 p.m. or as soon thereafter as the matter may be heard before the Honorable Judge Selna in Department 10C of the above-entitled Court, located at 411 West 4th Street, Room 1053, Santa Ana, CA 92701, Plaintiff EJH Group, Inc. will and does hereby move this Court, pursuant to Federal Rules of Civil Procedure, Rule 59, for a new trial as explained further herein.

1

Plaintiff's motion is made on the grounds that the Jury's Verdict is Contrary to the Clear Weight of the Evidence and is a Miscarriage of Justice for the following factual reasons:

(1) BMW's admission that the dashboard is "an important integral part of the car" that went unrepaired for the first 15 months of the lease supports the finding that the jury's defense verdict under the Implied Warranty is contrary to the clear weight of the evidence and a miscarriage of justice.

(2) The inconsistent testimony of BMW is evidence that BMW never determined the cause of the vehicle's defect and therefore BMW does not know if it is actually repaired. This violates BMW's legal duty to proactively determine if restitution or replacement of the vehicle is required under the express warranty. Accordingly, a defense verdict under the Express Warranty claim is contrary to the clear weight of the evidence and a miscarriage of justice.

(3) BMW presented no evidence to support any of its affirmative defenses. Accordingly, a defense verdict is contrary to the clear weight of the evidence and a miscarriage of justice.

(4) Plaintiff's position the jury defense verdict is a miscarriage of justice is further supported by the fact that the jury deliberated for less than 20 minutes which is not enough time for eight people to deliberate in good faith.

This motion is based upon this Notice of Motion and supporting Memorandum of Points and Authorities, the pleadings and papers on file herein, and upon such further oral or documentary matters as may be presented at the hearing of this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place via telephone on June 24, 2019 and continued via email thereafter. Plaintiff has complied with Local Rule 7-3 and now submits this present motion for

-2-

the Court's consideration.

Date:   July 5, 2019            LAW OFFICE OF MONICA HARTSOCK

                               By:  / s/ Monica L. Hartsock _____
                                        Monica Hartsock
                                        Attorney for Plaintiff
                                        EJH Group, Inc.

# **TABLE OF CONTENTS**

I.    INTRODUCTION .................................................................................... 1

II.   LEGAL STANDARD ............................................................................. 1

III.  FACTS .................................................................................................... 2

      a.    BMW's testimony admits that the dashboard is an important and
            integral part of the car and that it remained defective for the first 15
            months of the lease. ....................................................................... 3

      b.    BMW testified that it denied Plaintiff's request for a buyback for
            reasons that do not exist according to BMW's expert. .................. 4

      c.    BMW's testimony is evidence that BMW is intentionally remaining
            ignorant regarding the concerns with this vehicle and it resulted in
            BMW presenting conflicting evidence at trial. .............................. 5

            i.     BMW intentionally remained ignorant regarding the existence
                   of and the reason behind the Flexray Network trouble code. ........... 5

            ii.    BMW's expert's testimony is also contradicted by the Crevier
                   BMW repair order, trial exhibit no. 13. .............................. 6

            iii.   BMW did not ensure due diligence was performed in denying
                   Plaintiff's buyback request. .............................................. 7

      d.    In arguing the car is safe and did not need to be bought back, BMW
            applied the standard of a mechanical expert, not the standard of a
            reasonable consumer as the law requires. ....................................... 8

IV.   DISCUSSION ........................................................................................ 8

      a.    The Jury's Verdict is Contrary to the Clear Weight of the Evidence
            and is a Miscarriage of Justice that must be Overturned ............................. 10

            i.     The defense verdict on Plaintiff's Implied Warranty claim is a
                   miscarriage of justice because the Clear Weight of the
                   Evidence Establishes that BMW violated the Implied
                   Warranty and owes Plaintiff restitution. ........................................ 11

            ii.    The defense verdict on Plaintiff's Express Warranty claim is a
                   miscarriage of justice because the Clear Weight of the
                   Evidence Establishes that BMW violated the Express
                   Warranty by never determining the cause of the defect or
                   repairing the vehicle and owes Plaintiff rescission and
                   restitution subject to an offset. ......................................... 13

            iii.   The defense verdict in this case is a miscarriage of justice
                   because BMW failed to present any evidence supporting its
                   affirmative defenses. ....................................................... 19

            iv.    The granting of this motion is supported by the jury's short
                   deliberation in this case. ................................................... 20

1

V.   CONCLUSION ................................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Carr v. Wal-Mart Stores, Inc.* 312 F3d 667, 670 (5th Cir. 2002) ..................................... 2

*Gill v. Rolins Protective Services Co.,* 773 F2d 592, 594 (4thCir. 1985) ......................... 2

*Isip v. Mercedes-Benz USA, LLC* 65 Cal.Rptr.3d 695, 700 (2007).................................. 11

*Kortin v. Porsche Cars North America, Inc.* 38 Cal.App.4th 294, 303 (1995) ..........13, 14

*Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir. 1987) ..............................................................................................2, 11

*Lukather v. General Motors, LLC* 181 Cal. App. 4th 1041, 1050 (2010) ....................... 13

*Lundy v. Ford Motor Co.* 87 Cal.App.4th 472, 478 (2001)................................................ 8

*Mexia v. Rinker Boat Co.* 174 Cal.App.4th 1297, 1305 (2009)....................................... 11

*Mocek v. Alfa Leisure, Inc.* 114 Cal.App.4th 402, 406-407 (2003). ................................ 12

*Moore v. Hubbard & Johnson Lumber Co.* 149 Cal.App.2d 236 (1957)........................ 11

*Murphy v. City of Long Beach,* 914 F. 2d 183,187 (9th Cir. 1990) .............................2, 10

*Rinehart v. Wedge*, 943 F2d 1158, 1161 (9th Cir. 1991).................................................... 2

*United States v. 4.0 Acres of Land*, 175 F. 3d 1133, 1139 (9th Cir. 1999) ........................ 1

**Statutes**

Federal Rules of Civil Procedure Rule 59 ......................................................................... 1

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Vehicle manufacturers fought mandatory seatbelt laws, mandatory air bag laws, the 1966 National Traffic and Motor Vehicle Safety Act and the 1966 development of the National Highway Safety Bureau (succeeded in 1970 by the National Highway Traffic Safety Administration). Indeed, these new legal requirements led to a record number of product safety lawsuits and many product recalls and, ultimately, to *significantly* lower traffic death rates. Vehicle manufacturers have, historically, never come to the "safety table" willingly. No one is arguing that manufacturers are pro-traffic accidents but they have always, like in this case, fought and fought hard against liability arising from their vehicles. BMW is entitled to do so and this case is no exception to what has always been, BMW fights lemon law cases despite the clear pro-consumer Song-Beverly Act in the hopes that consumers will give up or that BMW will successfully confuse a jury enough to find a defense verdict like it did here.

Sometimes, juries get it wrong and, in this case, Plaintiff is entitled to a new trial because the jury got it wrong.

## II.     LEGAL STANDARD

Federal Rules of Civil Procedure Rule 59 provides this Court authority to grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Courts may grant new trials even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice. *United States v. 4.0 Acres of Land*, 175 F. 3d 1133, 1139 (9th Cir. 1999). In fact, a trial judge has a duty to set aside a verdict even though it is supported by substantial evidence, if the judge "is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice…" *Gill v.*

1

*Rolins Protective Services Co.,* 773 F2d 592, 594 (4thCir. 1985); *Carr v. Wal-Mart Stores, Inc.* 312 F3d 667, 670 (5th Cir. 2002) The judge can weigh the evidence and assess the credibility of witnesses, and need not view the evidence from the perspective most favorable to the prevailing party." *Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir. 1987).

The Court further has the inherent authority to *sua sponte* order a new trial for reasons not even asserted by either party. *Murphy v. City of Long Beach,* 914 F. 2d 183,187 (9th Cir. 1990). The Court may grant a new trial on grounds not specified in this motion after giving the parties "notice and an opportunity to be heard" *Rinehart v. Wedge*, 943 F2d 1158, 1161 (9th Cir. 1991)

The Court does not presume that the verdict is correct; nor need it view the evidence in the light most favorable to the party in whose favor the verdict was rendered. *Landes Const. Co., Inc. v. Royal Bank of Canada, supra* 833 F2d at 1371.

## III.  <u>FACTS</u>

This is a straight-forward lemon law case brought under the Song-Beverly Consumer Warranty Act codified at Civil Code section 1790 *et seq.* against the subject vehicle's manufacturer, BMW of North America LLC ("Defendant") because the subject vehicle's electric network resets while the vehicle is being driven at freeway speeds resulting in the dashboard display to cease reporting vital information to the driver. BMW argues the defect is limited to the dashboard display and repaired on the second repair visit. Plaintiff argues the defect is unrepaired by the dashboard display replacement because the issue is caused by an error with the flexray network. Plaintiffs position is supported by the undisputed flexray network trouble code history found on the vehicle and the fact this is a known concern with BMW vehicles that escalate to the vehicles turning themselves off while operating.

The matter was tried before a jury beginning on June 11, 2019. On June 13, 2019, the jury rendered a verdict that found that Defendant was not liable under the

Express or Implied Warranties of the Song-Beverly Act. See, Special Verdict Form (June 13, 2019), DN. 78. Judgement was then entered against Plaintiff on June 26, 2019. See, Judgment (June 26, 2019) DN 84.

The following evidence presented at this trial support the finding that Plaintiff is entitled to a new trial as the defense verdict is not supported by the clear weight of the evidence and constituted a miscarriage of justice.

### a. **BMW's testimony admits that the dashboard is an important and integral part of the car and that it remained defective for the first 15 months of the lease.**

BMW's expert's opinions that the malfunctioning dashboard was not a substantial impairment is unsupported by reason or logic and unsupported by BMW representative Mark's testimony. Mark testified that going the speed limit is a law, that the dashboard tells a driver how fast they are driving, and that a driver cannot tell how fast a vehicle is going if the dashboard's speedometer is not working (See, Exhibit 2: Trial Transcript Day 2 ("Exhibit 2"), page 6, lines 17 to 25). Mark further testified that "It (the dashboard) impairs your ability to observe some of the vital signs of the vehicle temporarily while the system is down. But other than that, you know, it is an important integral part of the car." (See, *Id* at page 7, line 1 to 6.)

BMW's expert admitted during trial that the dashboard concern was not repaired during the March, 2017 repair visit to BMW's authorized repair facility and argues it was repaired (finally and only by process of elimination) in July, 2017. "The first time they didn't really address the concern. The second time they - - they diagnosed the vehicle… And by process of elimination, they were able to determine that the instrument cluster failed." See, Exhibit 1: Trial Transcript Day 3, Volume I, ("Exhibit 1") at page 39, lines 12 to Page 40, line 6 (citing page 39 lines 19-21 and page 40, line 4-6.) He further states that if there was anything else wrong with this vehicle, there would be faults, and there were not. (*Id* at page 42, lines 1 to 4.) But Irvine BMW's own repair order (trial exhibit no. 10) states that there is a trouble

-3-

code for the flexray system. BMW's expert's testimony chooses to just ignore the flexray trouble codes found before and after the dashboard display was replaced.

### b. __BMW testified that it denied Plaintiff's request for a buyback for reasons that do not exist according to BMW's expert.__

Mark testified that his decisions are based on the experience of the field representatives. (See, Exhibit 2 at page 39, lines 17 to 23) Mark further testified that field representative Travis Brown emailed him "I checked the faults on the previous visit and saw several that indicated an error in the instrument cluster." (*Id* at page 33, line 23 to page 34, line 10.) Mark further testified that he relied on Mr. Brown's statement there were trouble codes related to the dashboard and did nothing to investigate the discrepancy between the repair order stating there were no trouble codes and Mr. Brown's email stating there were several trouble codes. (*Id* at page 44, line 25 to page 46, line 10.) This is problematic because BMW's expert, Holguin testified that there are no trouble codes related to the dashboard display. (See, Exhibit 1, page 51, line 9 to 25.) Because the car sends no fault codes for the dashboard display, Mr. Brown could not have seen "several codes relating to the dashboard." Accordingly, Mr. Mark's denial of the repurchase request is based upon questionable information at best or completely false information under the most unfavorable interpretation. BMW is legally required to investigate Plaintiff's request for a buyback and not only failed to do so when the request was made, but came to trial without confirming the cause of Plaintiff's concern. BMW does not know what is wrong with this car and because BMW does not know what is wrong with this car, it cannot argue the car is fixed. On the one hand, Mr. Mark says BMW knows the problem was the dashboard display because Mr. Brown reported seeing several trouble codes for the dashboard display. On the other hand, BMW says through its expert, Mr. Holguin that there are no trouble codes for the dashboard display and that through process of elimination, the only repair remaining had to have been the dashboard display – all the while ignoring the

-4-

trouble codes for the flexray network.

        **c. <u>BMW's testimony is evidence that BMW is intentionally remaining ignorant regarding the concerns with this vehicle and it resulted in BMW presenting conflicting evidence at trial.</u>**

          ***i. BMW intentionally remained ignorant regarding the existence of and the reason behind the Flexray Network trouble code.***

BMW's expert admits that the flexray is not connected to the instrument cluster. (See, Exhibit 1, page 45, lines 2-4 and page 71, lines 15 to 21.) Mr. Holguin further admits that a problem with the flexray system triggers a flexray fault code (See, *Id* at Page 46, lines 16-23). He then testified that the dashboard replacement was the correct repair because "there was no additional fault codes…" (See, *Id* at Page 48 lines 18-22.) Holguin further testified that if there was a problem, there would be fault codes and there were none. (See, *Id* at Page 42, lines 1 to 6 and again at Page 51, line 17 to page 52, line 4.) Holguin's testimony is in direct contradiction to the fact there are fault codes for the flexray system both before and after the dashboard was replaced (See, Trial Exhibit 10 repair order by Irvine BMW and Trial Exhibit No. 30, photographs taken by Mr. Stapleford after the dashboard was replaced.)

Even more questionable is the fact BMW's representative Daniel Marks specifically argues that there are fault codes on this vehicle, when BMW's expert testified that there are no such fault codes. (See subsection c above.)

BMW's expert simply ignored the flexray trouble codes in making his opinions despite his admission that he reviewed the repair orders. As highlighted above, Mr. Holguin repeatedly states there simply are no fault codes. Even more egregious is the fact that Mr. Holguin admits to receiving Mr. Stapleford's photographs and reviewing the repair orders and clearly knows there is a flexray network fault code yet Mr. Holguin intentionally refuses to investigate the flexray trouble code even though he admits that the flexray trouble code would be triggered when a problem with the flexray network is present.

-5-

Mr. Holguin intentionally remained ignorant as to the true details of the repair orders and problems with this vehicle. Mr. Holguin did not speak to any technicians that performed work on the vehicle (See, Exhibit 1 Trial Testimony, Day 3 Volume 1 at page 57 line 11 to 14.) Mr. Holguin admits that BMW has information available regarding the vehicle through ISTA reports but he failed to review the ISTA reports. Holguin also admits that there was key data missing from the repair orders but still failed to review the ISTA reports to further investigate the cause. (See, *Id* at 62, line 17 to page 64, line 10.) Further, Mr. Holguin's expert report was prepared by BMW's counsel, not Mr. Holguin. (See, *Id* at page 65, line 21 to page 66, line 22.)

### ii. BMW's expert's testimony is also contradicted by the Crevier BMW repair order, trial exhibit no. 13.

BMW's authorized repair facility, Crevier BMW also specifically notes in attempting to diagnose the dashboard concern that the customer should note the next time the dashboard goes out whether the audio is also turning off at the same time. (See, Trial Exhibit No. 13, Crevier BMW repair order.) It is undisputed that the car's audio system is on the MOST BUS system – BMW's expert testified that the networks do not affect each other. He testified "if anything on this (MOST) network failed, "its not gonna affect the instrument cluster…" (See, Exhibit 1, page 44, lines 6-12.) Setting aside Mr. Stapleford's testimony (that provides a more credible explanation as to what is happening with the vehicle and the flexray network) and relying only on BMW's own evidence, Crevier BMW clearly does not agree with BMW's expert's opinion that the audio (MOST BUS) network will not affect the dashboard because it is specifically asking Plaintiff to note if the audio goes out when the dashboard turns off. Clearly, Crevier BMW thinks the audio system (on the MOST BUS network) can affect the dashboard. Accordingly, Crevier BMW's notes indicate that Holguin's opinion that the networks do not interact is not the opinion of Crevier BMW.

1

2         ### iii. BMW did not ensure due diligence was performed in denying

3              Plaintiff's buyback request.

4       BMW's representative Mark testified that intermittent problems (like this) are

5   the worst kind of problems to diagnosis. (See, Exhibit 2, page 24, line 11 to 22.)

6   Despite this fact, Mark failed to perform even the slightest amount of due diligence

7   to confirm the vehicle had actually been repaired before denying the request for a

8   buyback. Ultimately denying the request because Mr. Brown said the trouble codes

9   were for the instrument cluster, but Mr. Holguin argues there are no trouble codes

10  for an instrument cluster.

11      Daniel Mark ("Mark") was the BMW representative that made the decision to

12  deny Plaintiff's requests for a buyback. (See, Exhibit 2, page 5, lines 15-18.) In

13  making the decision to deny Plaintiff's request under the California lemon law,

14  BMW failed to conduct the due diligence that the law requires as testified to as

15  follows:

16      • Mark did not know if the BMW repair facilities had verified the

17          dashboard concern. (See, *Id* at page 8, lines 3-8.)

18      • Mark did not watch the videos that were provided to BMW of the

19          dashboard turning off before denying Plaintiff's request for a buyback.

20          (See, *Id* at page 9, lines 1-11.)

21      • Mark testified that he relied on the field team to properly diagnose and

22          verify concerns. (See, *Id*.)

23      • Mark recommended that someone perform a ride along with Plaintiff but

24          never made sure that happened and in fact, did not know if such a ride

25          along ever happened. (See *Id* at page 9, line 24 to page 10, line, page 11,

26          line 3 to 16, and page 13, lines 12 to 25.)

27      • Mark did not review the operation reports before denying the buyback

28          request. (See, *Id* at page 40, line 3 to page 41, line 7)

-7-

1   And, Mark followed BMW's process and procedure (See, *Id* at page 14, lines 1 to

2   8), stating, in effect that there is no requirement in BMW's process and procedure

3   requiring the person who denies a consumer's buyback request to actually properly

4   investigate the claim.

5       All of this is important because Mark denied Plaintiff's buyback request by

6   relying on field engineer Brown's testimony that there were "several fault codes

7   indicated an error in the instrument cluster." But, then, BMW's expert testified that

8   there are no fault codes for an instrument cluster and in fact there were no fault

9   codes at all. (See citations set forth above in Section 3(d)(1).) Accordingly, BMW

10  did not conduct its due diligence in researching the concerns with this vehicle.

11  Therefore, as set forth more thoroughly below, a defense verdict in this goes against

12  the requirements of the Song-Beverly Act and constitutes a miscarriage of justice.

13          d.  **In arguing the car is safe and did not need to be bought back,**

14              **BMW applied the standard of a mechanical expert, not the**

15              **standard of a reasonable consumer as the law requires.**

16      BMW's expert testified that no one should have any safety concerns regarding

17  this vehicle because he, a mechanical expert has driven a different vehicle without

18  any instrument cluster at all and felt safe. (Page 73, lines 6 to 24.) This is

19  misleading because the California lemon law is based on an objective test based on

20  what a "reasonable person" would understand to be a defect, not a mechanical

21  expert with twenty-three years experience in the automotive field. See, *Lundy v.*

22  *Ford Motor Co.* 87 Cal.App.4th 472, 478 (2001)

23  **IV.   DISCUSSION**

24      There are occasions when juries simply ignore the fats and law and do not

25  compensate a plaintiff. It is the duty of the judge to prevent such injustice.

26      Plaintiff is entitled to a new trial under Federal Rules of Civil Procedure Rule

27  59(a)(1)(A). Plaintiff's expert set forth a reasonable and logical explanation of what

28  is wrong with the subject vehicle as well as the fact the vehicle remains unrepaired.

1    However, setting aside the testimony of Mr. Stapleford, it is clear from BMW's
2    testimony that BMW refused to take responsibility and buyback this vehicle despite
3    the fact that it has no idea what is wrong with it. Plaintiff respectfully requests the
4    Court's consideration of four key issues in considering Plaintiff's request for a new
5    trial on the grounds the jury's defense verdict is contrary to the clear weight of the
6    evidence and constitutes a miscarriage of justice.

7        1.   The verdict is inconsistent with California law regarding the implied
8    warranty of merchantability because Daniel Mark [Mark] admitted that the
9    dashboard is an important integral part of the car and Luis Holguin's [Holguin]
10   argued that the dashboard was not repaired until July, 2017 (15 months after the
11   vehicle was leased). The fact the vehicle has a problem with an important integral
12   part of the vehicle for fifteen months (and Plaintiff argues it was never repaired),
13   renders the jury's defense verdict on the implied warranty claim unsupportable.

14       2.   Under California law, BMW has a legal duty to proactively provide
15   restitution or replacement when a warranty covered defect is not repaired after a
16   reasonable number of attempts. It is clear from the conflicting testimonies of Mark
17   and Holguin and repair order evidence that BMW does not know what is happening
18   with the vehicle or whether it was ever repaired. Moreover, the inconsistent
19   testimony makes it clear that BMW failed to meet its duty to investigate this vehicle
20   and proactively determine if BMW is legally required to repurchase the vehicle.
21   Accordingly, BMW's testimony and the repair orders by BMW's authorized repair
22   facilities warrant a new trial on the grounds the clear weight of the evidence is
23   contrary to the jury's defense verdict on the express warranty claim, constituting a
24   miscarriage of justice.

25       3.   BMW presented no evidence in support of its affirmative defenses.

26       4.   The granting of this motion is supported by the fact the jury deliberated
27   for less than twenty minutes which is not enough time for each of the eight
28   members to discuss their opinion and conduct a good faith deliberation.

-9-

Plaintiff is entitled to a new trial as the jury verdict ignores the law and the clear weight of the evidence and the credibility of the trial witnesses. Not only is Plaintiff entitled to relief under the applicable laws, but the next owner of this subject vehicle is legally entitled to be made aware of the concerns with this vehicle. This vehicle, like other BMW vehicles, is likely to turn off while driving. As presented during the trial, this is a known problem with BMW vehicles and an unsuspecting consumer is going to end up in a highly unsafe position when this vehicle turns off on the freeway without any pre-warning or notification of this concern.

### a. **The Jury's Verdict is Contrary to the Clear Weight of the Evidence and is a Miscarriage of Justice that must be Overturned**

In ruling on a new trial motion based on insufficiency of the evidence and a miscarriage of justice argument, the district court must weigh the evidence and assess for itself the credibility of witnesses: "It is clear that the district judge has the right, and indeed the duty, to weigh the evidence as he saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in his conscientious opinion, the verdict is contrary to the clear weight of the evidence, or…to prevent…a miscarriage of justice." *Murphy v. City of Long Beach, supra* 914 F2d at 187.

The 9th circuit has held that there is no verbal formula to explain the concept of the "clear weight of the evidence" finding that all that can be said is that a verdict should be set aside where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed by the jury." *Landes Const. Co., Inc. v. Royal Bank of Canada, supra* 833 F2d at 1371-1372.

///

///

///

///

### i. The defense verdict on Plaintiff's Implied Warranty claim is a miscarriage of justice because the Clear Weight of the Evidence Establishes that BMW violated the Implied Warranty and owes Plaintiff restitution.

Despite BMW's argument to the Court, an implied warranty is not satisfied by the mere ability of the vehicle to get from point A to point B. Indeed, the California Court of Appeal specifically states that is not the standard for an implied warranty in *Isip v. Mercedes-Benz USA, LLC* 65 Cal.Rptr.3d 695, 700 (2007) "We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose."

The *Isip* court found that defining an implied warranty in terms of a vehicle that is "in safe condition and substantially free of defects" is consistent with the notion that the vehicle is fit or the ordinary purpose for which a vehicle is used. In *Moore v. Hubbard & Johnson Lumber Co.* 149 Cal.App.2d 236 (1957) the court found that "it is usually stated that the goods must be such that with the defects known they would be salable as goods of the general kind which were described or supposed to be when bought. As has been pointed out, if this defect were known they would not have been salable "as good of the general kind which were described." They would not measure up to the description given by the purchaser, and hence would breach the implied warranty of merchantability." (See, *Mexia v. Rinker Boat Co.* 174 Cal.App.4th 1297, 1305 (2009) citing *Moore v. Hubbard & Johnson Lumber Co., supra* at 241)

Here, BMW is liable for restitution to Plaintiffs under the implied warranty of merchantability because BMW admits the dashboard defect is significant and argues that it was not repaired until July, 2017 (Plaintiff's position is that it was never properly repaired).

BMW's expert, Luis Holguin admits that the subject vehicle's dashboard defect was not repaired until July, 2017. (See, Exhibit 1, page 39 lines 19-21 and page 40, line 4-6.) It is also undisputed that the dashboard turning off is a defect. Indeed, BMW admits that going the speed limit is a law, that the dashboard tells the driver how fast the vehicle is moving and that a driver cannot tell the exact speed of the vehicle if the speedometer is not working. (See, Exhibit 2, page 6, lines 17 to 25). BMW further admits that the dashboard turning off impairs a driver's ability to observe vital signs of the vehicle and that the dashboard is an important integral part of the car. (See, *Id* at page 7, line 1 to 6.)  Additionally, a working dashboard is an American highway & safety legal standard and requirement.

Accordingly, it cannot be determined that the vehicle was in a "salable" condition when it did not have a working dashboard and BMW admits it was sold with a defective dashboard unit that needed to be replaced. In fact, BMW argues the dashboard unit was not even properly repaired during the first repair visit in March, 2017.

Moreover, there is no legal requirement that a buyer allow the seller or manufacturer an opportunity to repair a product prior to bringing an action for breach of implied warranty o merchantability. (See, *Mocek v. Alfa Leisure, Inc.* 114 Cal.App.4th 402, 406-407 (2003).) The only requirement is that the buyer notify the seller within a reasonable time and in the case of a latent defect, such as this, reasonable time is based off the time the latent defect appeared.

Because BMW argues that the subject vehicle was leased to Plaintiff with a defective dashboard which was not repaired until 15 months into the lease (despite a March, 2017 repair opportunity) and because BMW admits the dashboard is an integral part of the vehicle, the clear weight of the evidence is that BMW is liable to Plaintiff for restitution under the implied warranty. In order to prevent a miscarriage of justice, the jury's defense verdict regarding the implied warranty claim must be set aside and Plaintiff must be granted a new trial on the implied warranty claim.

-12-

*ii. The defense verdict on Plaintiff's Express Warranty claim is a miscarriage of justice because the Clear Weight of the Evidence Establishes that BMW violated the Express Warranty by never determining the cause of the defect or repairing the vehicle and owes Plaintiff rescission and restitution subject to an offset.*

The manufacturer has an affirmative duty to replace a vehicle or make restitution to the buyer if the manufacturer is unable to repair the new vehicle after a reasonable number of repair attempts, and the buyer need not reject or revoke acceptance of the vehicle at any time. The buyer need only provide the manufacturer with a reasonable opportunity to fix the vehicle. *Lukather v. General Motors, LLC* 181 Cal. App. 4th 1041, 1050 (2010) citing *Kortin v. Porsche Cars North America, Inc.* 38 Cal.App.4th 294, 303 (1995). The *Kortin* court rejected Porsche's argument that the requirement to take affirmative steps to determine whether a vehicle must be replaced or repurchased required "clairvoyance" with respect to knowledge of claims not yet made by consumers. The *Kortin* court said instead that the manufacturer need only take a proactive step in reviewing repair orders and the vehicles mechanical history through its dealership's computer system to analyze a manufacturer's requirements under the law. *See discussion at Kortin v. Porsche Cars North America, Inc. supra,* 38 Cal.App.4th at 303. The *Kortin* decision has repeatedly been relied upon to support the finding of a willful violation and a civil penalty under the express warranty when a manufacturer has no program to sift through repair histories to proactively determine its legal duties under the Song-Beverly Act. Rather than institute such a program, manufacturers risk the civil penalty (likely a cost savings at the end of the day by ensuring there is no algorithm telling the manufacturers just how many vehicles must be bought back under the Song-Beverly act without a claim made by the consumer.)

Nonetheless, focusing not on the civil penalty arising under a willful violation of an express warranty claim but the affirmative duty on a manufacturer to investigate

-13-

whether it is legally required to replace or repurchase a vehicle, BMW here failed to confirm it has no legal obligation to Plaintiff. Just as outlined by the *Krotin* court, "Rather, the consumer's request for replacement or restitution is often prompted by the manufacturer's unforthright approach and stonewalling of fundamental warranty problems." *Id* at 303. In our case, Plaintiff's requests for a repurchase due to his safety concerns were prompted by the fact the defect was a serious safety concern and Irvine BMW had failed to repair it. Rather than properly investigate the claim and determine what is happening with the vehicle as required by law, BMW responded with and repeated stated "No" despite BMW's failure to determine whether the vehicle was actually safe or repaired.

Sure, BMW argues that the vehicle is repaired but even a cursory review of the evidence shows that BMW never conducted any due diligence to determine whether this vehicle needed to be repurchased under California law. Indeed, BMW is still unsure, having presented throughout this litigation, and at trial, conflicting theories and testimony, none of which are consistent with a finding that BMW did not need to repurchase the vehicle.

The following are just some of BMW's inconsistencies and contradictory evidence:

1. BMW argues that Mr. Mark properly denied Plaintiff's request for a buyback because the vehicle was fixed after the dashboard display was replaced. On the one hand, BMW argues that the replacement of the dashboard display was the correct remedy because according to Mr. Brown, the vehicle showed "several fault codes for the dashboard display."(Exhibit 2, page 39, lines 17 to 23 and page 44, line 25 to page 46, line 10.) On the other hand, BMW's expert argues that BMW vehicles do not show trouble codes for the dashboard display because it is just a display (Exhibit 1, page 51, line 9 to 25) and the repair order for which Mr. Brown is referencing specifically states "performed short test to check for faults. No relevant faults were found" (Trial Exhibit No. 11.) Is it that

-14-

in July, 2017 when the dashboard display was replaced, the vehicle exhibited "several codes" for the dashboard display or is it that at that same time there were no trouble codes? More importantly, how can BMW have fulfilled its affirmative legal duty to determine the need to replace the vehicle or make restitution if BMW presents conflicting testimony at trial?

2.  On the one hand, BMW argues that the flexray trouble code appears when there is a problem with the flexray network. (Exhibit 1, page 46, lines 16-23.) On the other hand, BMW ignores the repair order and photographs of the two times the flexray trouble code is found on the vehicle (once before the dashboard display is replaced and once after) (See Trial Exhibits No. 10 and Trial Exhibit No. 30) and argues the dashboard display replacement fixed the problem. Is it that a problem with the flexray network exists when the flexray trouble code appears or is it that there was no problem with the flexray network? More importantly, how can BMW have fulfilled its affirmative legal duty to determine the need to replace the vehicle or make restitution if BMW presents conflicting testimony?

3.  On the one hand, BMW argues that the flexray network is not connected in any way to the dashboard. (Exhibit 1, page 45, lines 2-4 and page 71, lines 15 to 21.) On the other hand, BMW argues that replacing the dashboard display in July, 2017 fixed the vehicle's defect that the dashboard attempts to reset itself while driving. (Exhibit 1 page 40, lines 4-6.) This, while ignoring the fact that the March, 2017 repair order indicates a trouble code for the flexray network. (Trial Exhibit No. 10.) Is it that replacing the dashboard display will remedy a flexray network trouble code or is it that the dashboard is not related to the flexray system? More importantly, how can BMW have fulfilled its affirmative legal duty to determine the need to replace the vehicle or make restitution if BMW presents conflicting testimony?

4.  On the one hand BMW argues the different networks are not related and that the audio system known as the MOST BUS system is not related to the dashboard

-15-

display. (Exhibit 1, page 44, lines 6-12.) One the other hand, BMW's authorized repair facility, Crevier BMW specifically asks and notes in the repair order that to properly diagnose the dashboard concern, Plaintiff needs to note (the next time the dashboard resets while driving) whether the audio also turns off. (Trial Exhibit No. 13.) Is it that the networks are not connected so that if one fails, the other remains unaffected or is it important to know whether the audio (aka Most Bus system) also goes out when the dashboard display resets in order to properly diagnose the problem? More importantly, how can BMW have fulfilled its affirmative legal duty to determine the need to replace the vehicle or make restitution if BMW presents conflicting testimony?

5.   On the one hand, BMW's expert argues that the electrical networks are independent of each other so, by design, if one goes down, it will not affect another network or turn off the entire vehicle. (Exhibit 1, page 44, lines 6-12.) On the other hand, BMW has issued recalls for the flexray system specifically causing vehicles to completely turn off when it malfunctions (and Mr. Stapleford testified to driving a BMW vehicle when this happened, that he relied upon BMW's other recalls, and that there are articles specific to the fact this is a known problem for BMW vehicles). Is it that the networks are all independent of each other and the failure of one cannot result in a vehicle turning off or is it that BMW has issued recalls on BMW vehicles because when a network malfunctions the entire vehicle turns off? Both cannot be true statements. More importantly, how can BMW have fulfilled its affirmative legal duty to determine the need to replace the vehicle or make restitution if BMW cannot address this problem in response to Plaintiff's request for a buyback?

6.  On the one hand, Mr. Mark asks that someone ride along with Plaintiff in connections with his review of Plaintiff's request for a second review of his buyback request. On the other hand, no BMW representative ever rides along with Plaintiff and BMW's denial is confirmed without Mr. Mark ever confirm if

-16-

anyone rode along with Plaintiff. (Exhibit 2: page 9, line 24 to page 10, line, page 11, line 3 to 16, and page 13, lines 12 to 25) Was it important for someone from BMW to ride along with Plaintiff in investigating Plaintiff's request for a buyback or not? More importantly, how can BMW have fulfilled its affirmative legal duty to determine the need to replace the vehicle or make restitution if BMW itself suggests a ride-along to determine more information and then never actually performs the ride-along?

7. On the one hand, BMW has ISTA data related to the information Irvine BMW uploaded to BMW's system for each repair at issue, just as Mr. Holguin pulled for his inspection in September, 2018. On the other hand, BMW argues that it does not have access to the key data from the dealerships and it is simply missing. (Exhibit 1 at page 62, line 17 to page 64, line 10.) Is it that BMW has information through the ISTA program or is the data missing? More importantly, how can BMW have fulfilled its affirmative legal duty to determine the need to replace the vehicle or make restitution if BMW never got the needed information from its authorized repair facilities.

The weight of the evidence shows that BMW, despite its superior position to know exactly what is wrong with this vehicle never answered the questions needed to determine whether it was legally obligated to buyback the vehicle – indeed, BMW never even asked the questions.

BMW was not able to explain why the dashboard display replacement was the proper repair despite the flexray error codes. Further, BMW, clearly intentionally stopped looking into this vehicle despite the inconsistencies. Mr. Holguin knows there are flexray error codes in the repair order but ignores this fact and argues that the dashboard display was the only nonconforming part. Mr. Holguin also knows that Crevier BMW's technicians clearly think the problem with the dashboard resetting could have something to do with the networks after asking for information about the audio system but he chooses to ignore it and stick to his argument that the

-17-

networks are not related. Mr. Holguin also knows that BMW has issued recalls for other BMW vehicles turning off as a result of the networks failing but chooses to ignore this and argue that networks are not connected. Mr. Holguin knows (and testified to) the fact that the dashboard display is not related to the flexray network but chooses to testify that replacing the dashboard display fixed the vehicle and completely ignores the flexray network. Mr. Holguin knows that a dashboard display malfunction does not issue trouble codes but chooses to ignore Mr. Brown's email reporting "several codes." Mr. Holguin knows that key data is missing from the repair orders but chooses to research no further despite his access to BMW's ISTA reports for the repairs. Mr. Mark knows that the repair order for the July, 2017 repair states that there are "no relevant faults" and that this information conflicts with Mr. Brown's claim that there were several codes but chooses to ignore the repair order and argue that the dashboard display replacement fixed the problem due to the trouble codes (that do not exist according to Mr. Holguin.)

BMW's inconsistencies constituted BMW repeatedly presenting clear evidence that BMW did nothing to meet its affirmative duty to determine whether BMW was legally required to repurchase or replace the vehicle under the Song-Beverly Act. In ruling on this motion, the Court should take into consideration the inconsistencies presented by BMW's witnesses and BMW's documents and weigh the evidence. It is clear from BMW's inconsistencies that a defense verdict is not supported by the substantial evidence, that BMW has not presented any evidence that the vehicle was repaired and that BMW never conducted the due diligence required to confirm it had no legal duty to buyback this vehicle. Starting with Mr. Mark, back in 2017, BMW simply said "no" to Plaintiff's request for a buyback and then repeatedly said no and took this case all the way to trial as a way to continue to say no. This repeated refusal to honor is legal requirement under the law despite no clear explanation or understanding as to what is really happening with this vehicle and no clear understanding as to whether the dashboard replacement really repaired the

vehicle.

The defense verdict is not supported by the substantial evidence and constitutes a miscarriage of justice because the credibility of BMW's evidence and witnesses must be weighed in a manner appropriate to reflect the inconsistencies which are too numerous to count. Moreover, at the very least, it is abundantly clear that BMW has never (not even at trial) conducted the due diligence the law requires to determine if this vehicle is actually repaired and whether BMW is legally obligated to buy it back. Without determining if this vehicle is repaired, it is more likely than not that this vehicle is going to continue to have concerns and another unsuspecting consumer is going to find themselves on the freeway with a computer resetting causing the dashboard to repeatedly cycle through its initiation process.

> ### iii.   The defense verdict in this case is a miscarriage of justice because BMW failed to present any evidence supporting its affirmative defenses.

BMW set forth three affirmative defenses in the pretrial conference order. (1) Plaintiff's damages, if any, are not recoverable to the extent that they are the proximate result of the acts and/or omissions of a third party for which Defendant is not responsible or liable. (2) Plaintiff's damages, if any, are not recoverable to the extent that they are the result of Plaintiffs unreasonable, unforeseeable, and inappropriate misuse and/or abuse of the subject vehicle by Plaintiff. (3) Plaintiff's claims for breach of the implied warranty are barred because nothing happened during the first three months of ownership, and the duration of the implied warranty is three months under California Civil Code section 1795.5.

The third affirmative defense is a legal argument regarding the timing to bring an implied warranty claim and was dealt with by the Court in the jury instructions. However, the first and second affirmative defenses were for the jury to determine. BMW presented no evidence in support of its affirmative defenses that Plaintiff's damages were caused for a third party or by Plaintiff and BMW presented and

1   reserved no other affirmative defenses in the preconference order. Accordingly, the

2   defense verdict is unsupported by the clear weight of the evidence as BMW failed

3   to present any evidence supporting its affirmative defenses.

4              ***iv.   The granting of this motion is supported by the jury's short***

5                      ***deliberation in this case.***

6         The jury deliberated from sometime after 1:44 p.m. to 2:06 p.m., or less than 22

7   minutes. While Plaintiff did not speak to any jurors and has no evidence of juror

8   misconduct, less than 22 minutes is not enough time for eight jurors to each share

9   their opinions on this case and conduct good faith deliberations. Twenty minutes is

10  only enough time for one juror to present his position with a position that he will

11  not waiver and the other jurors acquiescing to that view without any deliberation or

12  discussion of the issues. The short deliberation time supports a finding that the jury

13  was more concerned with leaving than spending time to determine the appropriate

14  outcome. Alternatively, it is an indicator that the evidence was so clearly defense-

15  sided as to represent a clear verdict immediately. This is unlikely however due to

16  the number of inconsistencies in BMW's evidence as set forth above. It is more

17  likely that a juror had a bias that was not disclosed during the voir dire process and

18  he declared he would not be swayed so, in order for the jurors to go home, everyone

19  had to agree with him.

20  **V.     CONCLUSION**

21        For the foregoing reasons, Plaintiff requests an order granting a new trial or, in

22  the alternative, a judgement in favor of Plaintiff and against Defendant for

23  rescission and restitution and a civil penalty under the California Song-Beverly Act.

24

25  Date:  July 5, 2019                    LAW OFFICE OF MONICA HARTSOCK

26

27                                         By: / s/ Monica L. Hartsock
                                              Monica Hartsock
28                                            Attorney for Plaintiff, EJH Group, Inc.

                                          -20-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### *CERTIFICATE OF SERVICE*

I hereby certify that on July 5, 2019, a copy of the following document was filed with the court via electronic filing:

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR A NEW TRIAL UNDER THE FEDERAL RULES OF CIVIL PROCEDURE RULE 59**

Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's System:

**DINSMORE & SHOHL LLP**
655 West Broadway, Suite 800
San Diego, CA 92101
Ph: (619) 400-0500
Fax: (619) 400-0501

Attorneys for Defendant BMW OF NORTH AMERICA, LLC